**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

MAOYING SONG,

Plaintiff,

v.

DEFENDANT "1" a/k/a "Thomas Johnson" and JOHN DOE Defendants 1-9 who are the cohorts of Defendant "1" and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred: Binance: 0x0761c615184427bfa06407a2774da966a1a6db01, 0xb9081e545401ba359addca369bb8e2f06cba23fa, 0xfc104a92b537bc912ead1228c0a8067b5c6ecbc6, 0x06e9f3093c2c0ead8873d7cef34aad6c6c8679cb, and 0xc1f701b31ea360b59d5d5f450b9377fdb3815165; Coinhako: 0xe0d6b179c9840834dc45b6644deaca1e9c36101f and 0xa29e963992597b21bcdcaa969d571984869c4ff5; and Crypto.com: 0xe384b08e8a5a2296f9c5d4db38f7aa45be83d7b5 and 0xf3b0073e3a7f747c7a38b36b805247b222c302a3

Defendants.

Case No. 6:24-cv-00809-RBD-EJK

**<u>SECOND AMENDED COMPLAINT FOR CONVERSION OF STOLEN CRYPTOCURRENCIES</u>**

Plaintiff, MAOYING SONG, by and through undersigned counsel, sues DEFENDANT "1" a/k/a "Thomas Johnson" and JOHN DOES 1-9, as follows:

## PRELIMINARY STATEMENT

1. Defendants stole 202,615.71 Tether (USDT) and 4.165 Ethereum (ETH) from Plaintiff pursuant to a sophisticated global internet cryptocurrency fraud and conversion scheme, the current market value of which is two hundred eighteen thousand four hundred fifty dollars and sixty-two cents ($218,450.62)[1].

2. Defendant "1" played a material role in the theft of Plaintiff's assets, and upon information and belief, he and his cohorts currently possess all or a significant portion of Plaintiff's stolen property.

3. Plaintiff brings this lawsuit to recover her stolen assets.

## SUBJECT MATTER JURISDICTION AND VENUE

4. This is an action for damages related to the theft of Plaintiff's cryptocurrency assets as detailed below.

5. Plaintiff is a U.S. citizen and citizen of the State of Florida.

6. Defendants are Chinese citizens who are located in Myanmar, based on information provided to her by the United States Secret Service. *See Diamond Resorts U.S. Collection Dev., LLC v. Sumday Vacations, LLC*, No. 619CV982ORL37DCI, 2019 WL 10375473, at *1 (M.D. Fla. May 29, 2019) (requiring evidentiary support to allege Defendant's citizenship).

7. The factual contentions regarding Defendant's location in Myanmar will likely be further supported after reasonable opportunity for further investigation and

[1] Current market value calculated using data from etherscan.io on June 6, 2024.

discovery. *See* Fed. R. Civ. P. Rule 11(b)(3).

8. Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

9. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c).

10. Defendants are subject to personal jurisdiction in this district, because their tortious conduct was directed at Plaintiff in this district. Moreover, Defendants more broadly direct business activities toward and conduct business with consumers throughout the United States, including within the state of Florida and within this district through at least two fraudulent websites www.cbpromaxtrade.com and www.cbsunmax.com which can be accessed on the internet and on smartphones and are accessible from Florida.

11. Moreover, every website has at least one associated IP address that it uses to communicate with devices on a network. The IP address for www.cbsunmax.com is 199.59.243.225[2]. Plaintiff has tracked the www.cbsunmax.com IP address to Tampa, Florida[3]. The link for www.cbpromaxtrade.com is currently inactive[4].

12. Defendant "1" represented that he was a citizen and resident of the United States and claimed to be located in Los Angeles, California. However, based

[2] At the time of tracing, the IP addresses for www.cbsunmax.com were 172.67.143.29 and 104.21.54.228 both of which were tracked to San Francisco, California.
[3] At the time of filing, the IP address for www.cbsunmax.com is 199.59.243.225 which has been tracked to Tampa, Florida.
[4] At the time of tracing, the IP addresses for www.cbpromasxtrade.com were 172.67.185.146 and 104.21.36.48 both of which were tracked to San Francisco, California.

on inquiries to the United States Secret Service, Defendant "1" and the John Doe Defendants – who are the owners of the subject cryptocurrency deposit addresses where Plaintiff's assets were transferred – are not U.S. citizens. According to the U.S. Secret Service, the Defendants are Chinese citizens running the scam out of Myanmar.

## THE PARTIES AND PERSONAL JURISDICTION

13. Plaintiff, MAOYING SONG, an individual, is *sui juris*, and is a resident and citizen of Florida.

14. Defendant "1" is an individual, is sui juris, and is subject to the personal jurisdiction of this Court. Defendant "1" represented via social media to Plaintiff MAOYING SONG that his name was "Thomas Johnson." Defendant represented to Plaintiff that he was born in Russia but that he was an American citizen living in Los Angeles, CA. However, Defendant "1" is a Chinese citizen who is located in Myanmar based on evidentiary support provided by the United States Secret Service.

15. JOHN DOE Defendants 1-9 are the cohorts of Defendant "1" and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:

- Binance:
  - 0x0761c615184427bfa06407a2774da966a1a6db01
  - 0xb9081e545401ba359addca369bb8e2f06cba23fa
  - 0xfc104a92b537bc912ead1228c0a8067b5c6ecbc6
  - 0x06e9f3093c2c0ead8873d7cef34aad6c6c8679cb
  - 0xc1f701b31ea360b59d5d5f450b9377fdb3815165
- Coinhako:

- 0xe0d6b179c9840834dc45b6644deaca1e9c36101f
- 0xa29e963992597b21bcdcaa969d571984869c4ff5

- Crypto.com:
  - 0xe384b08e8a5a2296f9c5d4db38f7aa45be83d7b5
  - 0xf3b0073e3a7f747c7a38b36b805247b222c302a3

16. John Doe Defendants 1-9 are *sui juris* and subject to the personal jurisdiction of this Court. JOHN DOES 1-9 have intentionally concealed their identity as part of their scheme to defraud Plaintiff. John Doe Defendants 1-9 are Chinese citizens located in Myanmar based on evidentiary support provided to Plaintiff by the United States Secret Service.

17. At all times material hereto, Defendants have maintained and continue to maintain private cryptocurrency wallets and cryptocurrency exchange accounts in which all of or a portion of Plaintiff's stolen cryptocurrency currently sits.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. Defendants Execute an International Cryptocurrency Theft Scheme

18. Plaintiff is a victim of a Pig butchering scam.

19. Pig butchering scams are "fraudulent crypto investment schemes directed from Asia," which are now a billion-dollar industry.[5]

20. Pig butchering scams, typically run and perpetrated by organized criminal groups in Southeast Asia, are called such because the victims are "likened to

[5] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/

hogs fattened up for slaughter."[6]

21. The scammers, typically located in Southeast Asia, carefully research their victims, and can spend months grooming the victim to gain their trust.

22. Pig butchering scammers utilize expertly crafted copycat websites that replicate authentic trading platforms. These scammers simulate reads and returns and the victims are unaware of the scheme.[7]

23. On or about May 27, 2023, Plaintiff was approached by Defendant "1" a/k/a "Thomas Johnson" who initially communicated with Plaintiff via FaceBook Messenger, and eventually via Whatsapp with a Whatsapp phone number of 1-213-421-3478 (VOIP), and email address thomasjohnso2409@gmail.com.

24. Defendant "1" misrepresented that he would teach Plaintiff how to become a successful cryptocurrency trader.

25. Initially, Plaintiff did not want to invest in cryptocurrency as she knew very little about cryptocurrency investments. However, Defendant "1" lured Plaintiff by showing her examples over FaceBook Messenger and Whatsapp of how he was successfully earning high returns on his cryptocurrency trading methods and promised Plaintiff that she too could earn quick and high returns on her investments.

26. Defendant "1" represented to Plaintiff that he was using trusted websites called www.cbpromaxtrade.com and www.cbsunmax.com that, according to

[6] https://www.nbcnews.com/news/crime-courts/pig-butchering-scams-rise-fbi-moves-stop-bleeding-rcna137009
[7] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/

Defendant "1", were third party plug-in web browsers on Metamask.

27. Defendant "1" assisted Plaintiff in utilizing www.cbpromaxtrade.com and www.cbsunmax.com which he claimed were third party plug-in web browsers for Metamask. Defendant stated that www.cbpromaxtrade.com and www.cbsunmax.com would be used as trading platforms with the purpose of making transactions, and after the transactions were complete, the assets would be transferred to Crypto.com for withdrawal.

28. However, the websites Defendant "1" provided to Plaintiff were not legitimate exchange websites owned and operated by any exchange but were instead fraudulent copycat websites created to deceive individuals, including Plaintiff, into believing they were investing on legitimate cryptocurrency exchanges.

29. To further entice Plaintiff into believing he was a legitimate investor who only wanted to assist Plaintiff in becoming a successful cryptocurrency trader like him, Defendant "1" shared a photograph of what is now believed to be a fake U.S. passport to verify his identity to Plaintiff.

30. After familiarizing herself with the process of trading on the fraudulent website recommended by Defendant "1," and in reliance on the foregoing false and fraudulent misrepresentations, Plaintiff started to transfer cryptocurrency from her Crypto.com and Metamask accounts, legitimate third-party online platforms for buying, selling, transferring, and storing cryptocurrency, to the fraudulent platforms (www.cbpromaxtrade.com and www.cbsunmax.com).

31. Defendants posted fraudulent returns on their fake websites which made

it appear that Plaintiff was making money on her trades.

32. As a result, Plaintiff continued to transfer cryptocurrency from her Crypto.com and Metamask accounts to the fraudulent exchanges. Because of the fraudulent representations contained on the fake account and misrepresentations made by Defendant "1" and additional individuals who claimed to be customer service representatives, Plaintiff believed that she had made significant money from the investment.

33. On November 14, 2023, Plaintiff believed, based on fraudulent statements on the fake trading platform cbpromaxtrade.com, that her cryptocurrency investment had grown to approximately 2,070,365.66 Tether (USDT) and 0.00097 Ethereum (ETH). This is the last statement Plaintiff saw before this website became inactive.

34. Around June 2023, Plaintiff was able to successfully withdraw cryptocurrency totaling approximately thirty-two thousand dollars ($32,000.00) from www.cbpromaxtrade.com and www.cbsunmax.com to her personal bank account.

35. Defendant "1" instructed Plaintiff to deposit around twenty-three thousand dollars ($23,000.00) back to www.cbpromaxtrade.com and www.cbsunmax.com.

36. However, when Plaintiff attempted to withdraw around two hundred two thousand and five hundred dollars ($202,500.00) worth of cryptocurrency on or about July 17, 2023, Plaintiff's account was suspended. Plaintiff was told that before she could withdraw her cryptocurrency, she was required to transfer additional

cryptocurrency to the fraudulent www.cbpromaxtrade.com and www.cbsunmax.com exchanges to pay taxes on her earnings.

37. When Plaintiff questioned Defendant "1" about the transfer issues she was experiencing, Defendant "1" provided excuses and made additional false representations.

38. Plaintiff communicated with additional individuals who claimed to be customer service representatives and assured Plaintiff that everything would be resolved once she deposited additional cryptocurrency to pay taxes on her earnings.

39. This is when Plaintiff realized she had been scammed. Plaintiff made numerous unsuccessful attempts to transfer the cryptocurrency from the fake copycat exchange back to her Crypto.com wallet.

**B. Plaintiff's Forensic Tracing of Their Stolen Cryptocurrency**

40. When a transaction is made on the blockchain it is assigned a "transaction hash" ("TXID"). A transaction hash is a unique string of characters that is given to every transaction that is verified and added to the blockchain. A TXID is used to uniquely identify a particular transaction. All on-chain transactions (the transactions from or to external addresses) have a unique TXID that can be seen in transaction details. All on-chain transactions (depositing and withdrawing of funds) have a unique TXID that can be found in transaction details.

41. Within the time frame of June 9, 2023, and July 19, 2023, Plaintiff MAOYING SONG made 9 transactions from her Crypto.com and Metamask

accounts to the fraudulent exchange. In total, Plaintiff transferred approximately 202,615.71 Tether (USDT) and 4.165 Ethereum (ETH) to the fraudulent exchange, which had a market value at the time of approximately $210,407.00(USD).

42. Plaintiff has retained forensic cryptocurrency tracing experts who have traced Plaintiffs stolen assets on the blockchain. Attached hereto as Exhibit A is the tracing report completed by experts at CNC Intelligence Inc. Plaintiff incorporates Exhibit A into her verified second amended complaint.

**COUNT 1**
**CONVERSION**

43. Through fraudulent misrepresentations, Defendant "1" convinced Plaintiff to investing her money into cryptocurrency.

44. Defendant "1" then convinced Plaintiff to transfer her cryptocurrency to fake exchanges owned and operated by Defendant "1".

45. After Plaintiff transferred her cryptocurrency assets to the fake exchanges, Defendant "1" then transferred her cryptocurrency to cryptocurrency deposit addresses owned by John Doe Defendants 1-9.

46. Defendants misappropriated Plaintiff's funds.

47. Defendants have converted Plaintiff's funds to their own use or to the use of others not entitled thereto and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment.

48. Plaintiff has suffered damages as a direct and proximate result of Defendants' conversion.

**WHEREFORE**, Plaintiff MAOYING SONG demands that judgment be entered against Defendant "1" and JOHN DOES 1-9, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

**COUNT II**
**UNJUST ENRICHMENT**

49. Plaintiff conferred a direct benefit upon Defendants by transferring the valuable cryptocurrency that Defendants converted from Plaintiff.

50. Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit.

51. The circumstances under which Plaintiff conferred, and Defendants accepted, such benefit render Defendants' retention of the benefits inequitable.

52. Equity requires that Defendants return to Plaintiff the benefits she conferred upon Defendants.

**WHEREFORE**, Plaintiff MAOYING SONG demands that judgment be entered against Defendant "1" and JOHN DOES 1-9, jointly and severally, for damages, interest, costs, and such other further relief as this Court deems just and proper.

**COUNT III**
**IMPOSITION OF CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS**

53. This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendants.

54. This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

55. As set forth more fully above, Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

56. The cryptocurrency assets at issue are specific identifiable property and have been traced to Binance, Coinhako, and Crypto.com.

57. Any and all assets being held by Defendants at Binance, Coinhako, and Crypto.com must be held in trust for Plaintiff's benefit, and Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

58. The digital assets identified herein which are being held by Defendants at Binance, Coinhako, and Crypto.com must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

**WHEREFORE**, Plaintiff MAOYING SONG demands the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of Defendant "1" and/or JOHN DOES 1-9, in the identified cryptocurrency wallet addresses held at Binance, Coinhako, and Crypto.com and further demands that the wrongfully obtained property be returned to Plaintiff.

**COUNT IV**
**CONSPIRACY**

59. Plaintiff adopts and realleges the allegations set forth in paragraphs 13 through 40 above, as if fully and expressly set forth herein, and further alleges as follows.

60. The Defendants conspired and confederated with each other to commit, and committed, Conversion (Count I); and Unjust Enrichment (Count II).

61. Relying on the false statements made by Defendant "1", including that he was an expert in cryptocurrency investments and would help Plaintiff earn money on her investments, Plaintiff transferred her cryptocurrency assets to fake cryptocurrency platforms which were in actuality cryptocurrency deposit addresses owned by the John Doe Defendants 1-9.

62. Defendant "1" conspired with others who acted as customer service representatives and are the owners of the cryptocurrency deposit addresses where Plaintiff's stolen cryptocurrency was transferred.

63. Once her assets were transferred to the fake exchanges, Defendants refused to return them to Plaintiff.

64. As a result, Plaintiff has suffered damages as a direct and proximate result of Defendants' conspiracy.

**WHEREFORE**, Plaintiff MAOYING SONG demands that judgment be entered against Defendant "1" and JOHN DOES 1-9, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and

proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

## VERIFICATION

I, MAOYING SONG, hereby declare under penalty of perjury that I have read the foregoing SECOND AMENDED COMPLAINT FOR CONVERSION OF STOLEN CRYPTOCURRENCY and verify that all statements herein are true and correct to the best of my knowledge, understanding, and belief.

Dated: June 7, 2024

______________________________
MAOYING SONG, Plaintiff

Dated: June 7, 2024

Respectfully Submitted,

*/s/ Daniel J. Thornburgh*

Daniel J. Thornburgh, Esq.
Fla. Bar No. 0042661
AYLSTOCK, WITKIN,
KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 850-916-7449
dthornburgh@awkolaw.com

*Attorney for Plaintiff*