UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MAOYING SONG,

    Plaintiff,

v.                                                                                                Case No: 6:24-cv-809-JSS-UAM

DEFENDANT 1, JOHN DOE
DEFENDANTS 1-9 and BINANCE
WALLET DEFENDANTS,

    Defendants.
_____/

## ORDER

Plaintiff moves for a temporary restraining order or, alternatively, a preliminary injunction. (Motion, Dkt. 79). Upon consideration of the Motion, and for the reasons set forth below, the Motion is granted.

## BACKGROUND

Plaintiff alleges that in May 2023, she was approached by Defendant 1 a/k/a Thomas Johnson on Facebook Messenger to invest in cryptocurrency using the online trading platforms www.cbpromaxtrade.com and www.cbsunmax.com which Plaintiff believed were legitimate online cryptocurrency exchanges that would allow Plaintiff to earn high rates of return within a short period of time on all trades. (Dkt. 12 ¶¶ 23–27.) Plaintiff transferred cryptocurrency from her Crypto.com and MetaMask accounts—legitimate third-party online platforms for buying, selling, transferring, and storing cryptocurrency—to cbpromaxtrade and cbsunmax. (*Id*. ¶¶ 28– 30.) According

to Plaintiff cbpromaxtrade and cbsunmax are fraudulent "copycat" exchanges.[1] (*Id.* ¶ 28.)

Plaintiff maintains that she initially believed the exchanges were legitimate because she saw returns posted on the websites and successfully withdrew cryptocurrency worth approximately $32,000.00 from her account. (*Id.* ¶¶ 33–34.) However, when Plaintiff later attempted to withdraw cryptocurrency worth approximately $202,500.00 from her account, she was told that her account was suspended, and she would have to transfer additional cryptocurrency to the fraudulent exchanges to pay taxes on her earnings. (*Id.* ¶ 36.) After Plaintiff questioned Defendant 1 about the transfer issues she was experiencing and engaged in numerous unsuccessful attempts to withdraw her money, Plaintiff realized she had been scammed. (*Id.* ¶¶ 37–39.)

---

[1] Plaintiff asserts that she is the victim of what is colloquially known as a "pig butchering" scam. (Dkt. 12 ¶¶ 18–22.) According to the legal treatise *Advising the Elderly Client*, pig butchering scams often involve:

> [A] virtual romance or friendship hook that is followed by a persuasive campaign to get the victim to invest based on trust which is often won by a series of small fake returns sent to the victim in exchange for getting them to invest or give more funds until the 'fattened pig' is 'butchered,' and the scammer takes the money and cuts contact. The scam usually involves cryptocurrency and a fake investment portal that duplicates a real one . . . a 2024 study by researchers at the University of Texas found that known pig butchering scammers . . . nett[ed] at least $75 billion in cryptocurrency from 2021 to 2024.

A. Kimberly Dayton et al., *Advising the Elderly Client*, *Pig Butchering Scams* § 4:20 (2024).

Through forensic blockchain analytics tracing, Plaintiff identified the following cryptocurrency wallet addresses held at the Binance cryptocurrency exchange that are believed to be owned or controlled by Defendants and used to hold the cryptocurrency assets allegedly stolen from Plaintiff:

| **Binance Wallet Addresses**: | 0x0761c615184427bfa06407a2774da966a1a6db01; 0xb9081e545401ba359addca369bb8e2f06cba23fa; 0xfc104a92b537bc912ead1228c0a8067b5c6ecbc6; 0x06e9f3093c2c0ead8873d7cef34aad6c6c8679cb; 0xc1f701b31ea360b59d5d5f450b9377fdb3815165. |
|---|---|

(Dkt. 79-2.) Plaintiff requests that the court freeze the assets contained in the cryptocurrency wallet addresses (Destination Addresses) identified above. (Dkt. 79 at at 2.) As set forth in Plaintiff's complaint, Plaintiff alleges that Defendants stole 202,615.71 Tether (USDT) and 4.165 Ethereum (ETH) which at the time of the theft had an approximate market value of $210,407.00. (Dkt. 12 ¶ 41.) Plaintiff maintains that although Defendants identities are unknown, she provided Defendants notice of the Motion by serving a copy via a non-fungible token and uploading it to her service website. (Dkt. 79 at 3.) This method of service was the same alternate service method that the court permitted Plaintiff to use for serving her complaint on Defendants. (Dkt. 75.)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 65 permits the court to "issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if the following conditions are met: (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1)(A)–(B). Additionally, to obtain a TRO, a party must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest. *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

If a TRO is issued without notice, the order must state the following: (1) the date and hour it was issued; (2) describe the injury and state why it is irreparable; (3) state why the order was issued without notice; and (4) be promptly filed in the clerk's office and entered into the record. Fed. R. Civ. P. 65(b)(2). A TRO expires 14 days after the order is entered, unless the court extends the TRO for a similar period with good cause or the adverse party consents to a longer extension. *Id*. Further, the movant seeking a TRO must give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

A court cannot freeze a defendant's assets prior to trial in a case where only money damages are at issue. *See Grupo Mexicano de Desarrollo, S.A. v. All Bond Fund, Inc.*, 527 U.S. 308, 332–33 (1999). However, the Eleventh Circuit has held that district courts may freeze assets to preserve funds where equitable relief is sought, even when the request for equitable relief is coupled with a request for money damages. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1994) (explaining that a plaintiff's request for equitable relief invokes a district court's inherent equitable powers to order preliminary relief, including asset freeze, in order to ensure the availability of permanent relief); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (holding that the inclusion of a claim seeking civil penalty damages in addition to a claim seeking the equitable remedy of disgorgement does not make the remedies sought wholly legal and not equitable).

## ANALYSIS

As an initial matter, the court finds that it has the authority to issue a TRO that freezes the cryptocurrency wallets located at the Destination Addresses in this case because Count III of Plaintiff's verified second amended complaint seeks the imposition of a constructive trust upon the property taken from Plaintiff and currently held by Defendants as well as disgorgement of any digital assets contained at the Destination Addresses. (Dkt. 12 ¶¶ 53–58); *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (issuing a temporary restraining order containing an asset freeze of cryptocurrency wallets controlled by yet

unidentified defendants when plaintiff sought the equitable remedy of a constructive trust). With this in mind, the court will address the Rule 65(b)(1) factors.

First, Plaintiff has sufficiently alleged in her complaint that she will suffer immediate loss before the adverse party can be heard in opposition. According to the complaint, the stolen assets could be transferred from the Destination Addresses at any time and Defendants have no intention of returning the cryptocurrency assets to Plaintiff. (Dkt. 12 ¶¶ 17–42.) Second, although Plaintiff is unable to identify Defendants at this juncture given the online and anonymous nature of the alleged cryptocurrency transactions, Plaintiff provided notice to Defendants via non-fungible token and her service website. (Dkt. 79 at 3.) Accordingly, Plaintiff's notice to Defendants is sufficient under the circumstances.

Next, turning to the *Schiavo* factors, the court finds that Plaintiff has a substantial likelihood of success on the merits of her claims against Defendants for conversion, unjust enrichment, constructive trust and disgorgement, and conspiracy because Plaintiff has alleged she was duped into transferring her cryptocurrency to the fraudulent exchanges and provided evidence in the form of a forensic expert blockchain tracing investigation report to establish where Plaintiff's assets are currently being held. (Dkt. 12 ¶¶ 43–64, Dkt. 79-1 at 9, Dkt. 79-2.) Plaintiff will suffer irreparable injury if the TRO is not granted because Defendants can quickly transfer the assets to another untraceable cryptocurrency wallet or to offshore entities organized in unknown locations. (Dkt. 79-1 at 10.) If that happens, Plaintiff loses any chance of obtaining a recovery of the stolen funds. Thus, the preliminary freeze of the

Destination Addresses would ensure the ability to obtain some permanent relief. *Levi Strauss & Co.*, 51 F.3d at 987. The threatened injury here, Plaintiff's loss of over $200,000 worth of cryptocurrency, outweighs any possible harm of freezing the cryptocurrency wallets Destination Addresses since the wallets contain Plaintiff's stolen assets due to the alleged unlawful activity of Defendants. Last, the entry of the relief would serve the public interest because it would promote the rule of law. Moreover, the public interest is properly served by promoting the objectives of the Financial Crimes Enforcement Network, a division of the Department of the Treasury of the United States and providing public investors assurance that courts will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like Plaintiff's stolen assets in this action. Therefore, the court finds that Plaintiff has met her burden for the issuance of a temporary restraining order.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Plaintiff's Motion for a Renewed Temporary Restraining Order (Dkt. 79) is **GRANTED**.

2. A temporary restraining order is **ENTERED** as follows:

    a. Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or

    otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendants or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held in: (1) the Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

b. Notice was provided to Defendants prior to entry of this Order.

c. Pursuant to Fed. R. Civ. P. 65(c), the court accepts Plaintiff's One Thousand Dollars ($1,000.00) bond previously posted with the court (Dkt. 25) as adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order.

d. Upon a showing of good cause by any party-of-interest, the court may enter a further order amending the amount of Plaintiff's bond requirement as a means of providing a source of funds to which Defendants may be entitled for a wrongful injunction or restraint.

e. This Temporary Restraining Order will expire **June 4, 2025**, in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendants consent that it should be extended for a longer period of time. However, the court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

f. Plaintiff **SHALL** serve Defendants with a copy of this Order in the same manner she served the Motion. Thereafter, Plaintiff shall file a certificate of service advising the court that Defendants have been served. Once Defendants are served, Plaintiff **SHALL** file a motion to convert the temporary restraining order into a preliminary injunction.

**ORDERED** in Orlando, Florida, on May 21, 2025

                        JULIE S. SNEED
                      UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record