**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

MAOYING SONG,

Plaintiff,

v.

INFINIWEB TECHNOLOGY, INC.;
ITECHNO SPECIALIST, INC. ;
DEFENDANT "1" a/k/a "Thomas Johnson"; and JOHN DOE Defendants 1-9 who are the cohorts of Defendant "1" and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:

Case No. 6:24-cv-00809-JSS-NWH

Binance:
0x0761c615184427bfa06407a2774da966a1a6db01
0xb9081e545401ba359addca369bb8e2f06cba23fa
0xfc104a92b537bc912ead1228c0a8067b5c6ecbc6
0x06e9f3093c2c0ead8873d7cef34aad6c6c8679cb
0xc1f701b31ea360b59d5d5f450b9377fdb3815165

Coinhako:
0xe0d6b179c9840834dc45b6644deaca1e9c36101f
0xa29e963992597b21bcdcaa969d571984869c4ff5

Crypto.com:
0xe384b08e8a5a2296f9c5d4db38f7aa45be83d7b5
0xf3b0073e3a7f747c7a38b36b805247b222c302a3

Defendants.

**<u>THIRD AMENDED COMPLAINT FOR</u>**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

Plaintiff, MAOYING SONG, by and through undersigned counsel, sues DEFENDANT "1" a/k/a "Thomas Johnson," Infiniweb Technology, Inc., ITECHNO Specialist Inc., and JOHN DOES 1-9, as follows:

## PRELIMINARY STATEMENT

1. Defendants stole 202,615.71 Tether (USDT) and 4.165 Ethereum (ETH) from Plaintiff pursuant to a sophisticated global internet cryptocurrency fraud and conversion scheme.

2. Defendant "1" played a material role in the theft of Plaintiff's assets, and upon information and belief, he and his cohorts currently possess all or a significant portion of Plaintiff's stolen property.

3. Recent investigations by the United States Department of Justice ("DOJ") and the United States Secret Service, as detailed in a Verified Complaint for Forfeiture *In Rem* filed in the United States District Court for the District of Columbia (Case No. 1:25-cv-01907), have traced the proceeds of cryptocurrency confidence scams through a network of at least 144 OKX exchange accounts and hundreds of intermediary wallets. The DOJ's action resulted in the seizure of approximately 225,364,961 USDT held in seven wallets on the OKX platform.

4. Plaintiff's own blockchain tracing using the First In First Out (FIFO) method confirms that Ms. Song's stolen cryptocurrency was laundered through 23

wallets that were also identified in the DOJ's Verified Complaint or its exhibits[1]. These wallets are part of the same laundering network targeted by the DOJ's forfeiture action.

5. The DOJ's Verified Complaint and supporting evidence identify Infiniweb Technology, Inc. ("Infiniweb") as the owner of five of the seized wallets, which collectively held tens of millions of USDT in criminal proceeds. Infiniweb has appeared in the DOJ's forfeiture action and filed a Verified Claim asserting an interest in the seized assets.

6. The DOJ's investigation further identifies ITECHNO Specialist Inc. ("ITECHNO") as a key participant in the scam and laundering operation. ITECHNO operated out of a scam compound in the Philippines, employing forced labor to perpetrate cryptocurrency confidence scams and launder victim funds.

7. Plaintiff brings this amended action to add Infiniweb and ITECHNO as defendants, based on their involvement in the theft and laundering of Plaintiff's assets as established by the DOJ's findings and Plaintiff's tracing analysis.

8. Infiniweb and ITECHNO, along with an individual who called himself "Thomas Johnson," played a material role in the theft of Plaintiff's assets, and they and their co-conspirators currently possess all or a significant portion of Plaintiff's

[1] Lukka, an independent blockchain expert retained by Plaintiff used the Last In First Out (LIFO) method which showed at least 23 wallets matching the wallets identified in the DOJ's Verified Complaint or its exhibits.

stolen property.

9. Plaintiff brings this lawsuit to recover her stolen assets.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This is an action for damages related to the theft of Plaintiff's cryptocurrency assets as detailed below.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). This action includes damages pursuant to 18 U.S.C. § 1964 (the "Racketeer Influenced and Corrupt Organizations Act" or "RICO"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

12. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c).

13. Plaintiff is a U.S. citizen and citizen of the State of Florida.

14. Defendants "1" a/k/a "Thomas Johnson" and JOHN DOES 1-9 are Chinese nationals believed to be located in Myanmar or the Philippines, based on information provided to Plaintiff by the Department of Justice and the United States Secret Service. *See Diamond Resorts U.S. Collection Dev., LLC v. Sumday Vacations, LLC*, No. 619CV982ORL37DCI, 2019 WL 10375473, at *1 (M.D. Fla. May 29, 2019) (requiring evidentiary support to allege Defendant's citizenship).

15. Defendant Infiniweb Technology, Inc. is registered in the British Virgin

Islands.

16. Defendant ITECHNO Specialist Inc. is organized under the laws of the Philippines.

17. Defendants are subject to personal jurisdiction in this district, because their tortious conduct was directed at Plaintiff in this district. Moreover, Defendants more broadly direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and within this district through at least two fraudulent websites www.cbpromaxtrade.com and www.cbsunmax.com which can be accessed on the internet and on smartphones and are accessible from Florida.

18. Moreover, every website has at least one associated IP address that it uses to communicate with devices on a network. The IP address for www.cbsunmax.com is 199.59.243.225[2]. Plaintiff has tracked the www.cbsunmax.com IP address to Tampa, Florida[3]. The link for www.cbpromaxtrade.com is currently inactive[4].

19. As detailed more fully in paragraphs 20-50 and incorporated herein, on or about May 27, 2023, Plaintiff met an individual on Facebook who used the alias

---

[2] At the time of tracing, the IP addresses for www.cbsunmax.com were 172.67.143.29 and 104.21.54.228 both of which were tracked to San Francisco, California.

[3] At the time of filing, the IP address for www.cbsunmax.com is 199.59.243.225 which has been tracked to Tampa, Florida.

[4] At the time of tracing, the IP addresses for www.cbpromasxtrade.com were 172.67.185.146 and 104.21.36.48 both of which were tracked to San Francisco, California.

"Thomas Johnson."

20. Defendant "Johnson" gradually gained Plaintiff's trust through continuous communication and misrepresentations concerning profitable trading strategies using cryptocurrency.

21. Defendant "Johnson" instructed the Plaintiff to open an account on Crypto.com where she would purchase cryptocurrency for investment purposes.

22. Plaintiff was then directed to download cryptocurrency trading platforms, including Promax Trade (www.cbpromaxtrade and www.cbsunmax.com).

23. To make Plaintiff believe she was downloading legitimate trading platforms, the Plaintiff was required to go through a fake KYC onboarding process where she was required to provide her name, her address, and was directed to upload her Florida driver's license.

24. Unbeknownst to the Plaintiff, the platforms were fraudulent and the cryptocurrency wallets that she believed were controlled by her were owned and controlled by the Defendants, including ITECHNO.

25. This fraudulent trading applications were highly interactive and were used as a sophisticated tool to deceive Plaintiff into believing she was making a significant return on her investment.

26. As detailed below, Defendants directed numerous false and fraudulent

representations, including fake financial statements from the malicious trading platforms showing high returns on her investments, all while Plaintiff was residing in Florida and within this district. Plaintiff suffered significant financial and emotional pain and suffering as a direct result of the fraud perpetrated against her by the Defendants while Plaintiff was located in the State of Florida.

27. Defendants knew that Plaintiff was a Florida citizen as she was required to provide the malicious trading platform with her physical address and Florida driver's license.

## THE PARTIES AND PERSONAL JURISDICTION

28. Plaintiff, MAOYING SONG, an individual, is *sui juris*, and is a resident and citizen of Florida.

29. Defendant "1" a/k/a Thomas Johnson, whose true identity remains presently unknown, is an is an individual, is sui juris, and is subject to the personal jurisdiction of this Court individual. Defendant 1. Defendant "1" represented via social media to Plaintiff MAOYING SONG that his name was "Thomas Johnson." Defendant represented to Plaintiff that he was born in Russia but that he was an American citizen living in Los Angeles, CA. However, it is believed that Defendant "1" is a Chinese citizen who is located in Myanmar based on evidentiary support provided by the United States Secret Service.

30. Infiniweb Technology, Inc., ITECHNO Specialist Inc., and JOHN

DOE Defendants 1-9 are the cohorts of Defendant "1" and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:

- Binance:
  - 0x0761c615184427bfa06407a2774da966a1a6db01
  - 0xb9081e545401ba359addca369bb8e2f06cba23fa
  - 0xfc104a92b537bc912ead1228c0a8067b5c6ecbc6
  - 0x06e9f3093c2c0ead8873d7cef34aad6c6c8679cb
  - 0xc1f701b31ea360b59d5d5f450b9377fdb3815165
- Coinhako:
  - 0xe0d6b179c9840834dc45b6644deaca1e9c36101f
  - 0xa29e963992597b21bcdcaa969d571984869c4ff5
- Crypto.com:
  - 0xe384b08e8a5a2296f9c5d4db38f7aa45be83d7b5
  - 0xf3b0073e3a7f747c7a38b36b805247b222c302a3

31. John Doe Defendants 1-9 are *sui juris* and subject to the personal jurisdiction of this Court. JOHN DOES 1-9 have intentionally concealed their identity as part of their scheme to defraud Plaintiff. John Doe Defendants 1-9 are Chinese citizens located in Myanmar based on evidentiary support provided to Plaintiff by the United States Secret Service.

32. Defendant Infiniweb Technology, Inc. is a corporation registered in the British Virgin Islands. According to the DOJ's Verified Complaint and Infiniweb's Verified Claim, it is the owner of all seven of the cryptocurrency wallets seized by the DOJ, which collectively holds more than 225 million USDT in criminal proceeds.

33. Defendant ITECHNO Specialist Inc. is a company organized under the laws of the Philippines. DOJ filings identify ITECHNO as operating a scam compound in the Philippines and laundering victim funds, including, upon information and belief, Plaintiff's stolen cryptocurrency.

34. Defendants "1" a/k/a "Thomas Johnson," JOHN DOES 1-9, Infiniweb and ITECHNO are participants in the criminal enterprise described herein.

35. At all times material hereto, Defendants have maintained and continue to maintain private cryptocurrency wallets and cryptocurrency exchange accounts in which all or a portion of Plaintiff's stolen cryptocurrency currently sits.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. Defendants Execute an International Cryptocurrency Theft Scheme

36. Plaintiff is a victim of an international pig butchering scam.

37. Pig butchering scams are "fraudulent crypto investment schemes

directed from Asia," which are now a billion-dollar industry.[5]

38. Pig butchering scams, typically run and perpetrated by organized criminal groups in Southeast Asia, are called such because the victims are "likened to hogs fattened up for slaughter."[6]

39. The scammers, typically located in Southeast Asia, carefully research their victims, and can spend months grooming the victim to gain their trust.

40. Pig butchering scammers utilize expertly crafted copycat websites that replicate authentic trading platforms. These scammers and websites simulate real investment returns by displaying profits on the website, while the victims are unaware of the scheme.[7]

41. On or about May 27, 2023, Plaintiff was approached by Defendant "1" a/k/a "Thomas Johnson" who initially communicated with Plaintiff via Facebook Messenger, and eventually via WhatsApp with a WhatsApp phone number of 1-213-421-3478 (VOIP), and email address thomasjohnso2409@gmail.com.

42. Defendant "1" misrepresented that he would teach Plaintiff how to become a successful cryptocurrency trader.

43. Initially, Plaintiff did not want to invest in cryptocurrency as she knew very little about cryptocurrency investments. However, Defendant "1" lured Plaintiff

---

[5] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/
[6] https://www.nbcnews.com/news/crime-courts/pig-butchering-scams-rise-fbi-moves-stop-bleeding-rcna137009
[7] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/

by showing her examples over Facebook Messenger and WhatsApp of how he was successfully earning high returns on his cryptocurrency trading methods and promised Plaintiff that she too could earn quick and high returns on her investments.

44. Defendant "1" represented to Plaintiff that he was using trusted websites called www.cbpromaxtrade.com and www.cbsunmax.com that, according to Defendant "1", were third party plug-in web browsers on Metamask.

45. Defendant "1" assisted Plaintiff in utilizing www.cbpromaxtrade.com and www.cbsunmax.com which he claimed were third party plug-in web browsers for Metamask. Defendant stated that www.cbpromaxtrade.com and www.cbsunmax.com would be used as trading platforms with the purpose of making transactions, and after the transactions were complete, the assets would be transferred to Crypto.com for withdrawal.

46. However, the websites Defendant "1" provided to Plaintiff were not legitimate exchange websites owned and operated by any exchange but were instead fraudulent copycat websites created to deceive individuals, including Plaintiff, into believing they were investing on legitimate cryptocurrency exchanges.

47. To further entice Plaintiff into believing he was a legitimate investor who only wanted to assist Plaintiff in becoming a successful cryptocurrency trader like him, Defendant "1" shared a photograph of what is now believed to be a fake U.S. passport to verify his identity to Plaintiff.

48. After familiarizing herself with the process of trading on the fraudulent website recommended by Defendant "1," and in reliance on the foregoing false and fraudulent misrepresentations, Plaintiff started to transfer cryptocurrency from her Crypto.com and MetaMask accounts, legitimate third-party online platforms for buying, selling, transferring, and storing cryptocurrency, to the fraudulent platforms (www.cbpromaxtrade.com and www.cbsunmax.com).

49. Defendants posted fraudulent returns on their fake websites which made it appear that Plaintiff was making money on her trades.

50. As a result, Plaintiff continued to transfer cryptocurrency from her Crypto.com and MetaMask accounts to the fraudulent exchanges. Because of the fraudulent representations contained on the fake account and misrepresentations made by Defendant "1" and additional individuals who claimed to be customer service representatives, Plaintiff believed that she had made significant money from the investment.

51. On November 14, 2023, Plaintiff believed, based on fraudulent statements on the fake trading platform cbpromaxtrade.com, that her cryptocurrency investment had grown to approximately 2,070,365.66 Tether (USDT) and 0.00097 Ethereum (ETH). This is the last statement Plaintiff saw before this website became inactive.

52. Around June 2023, Plaintiff was able to successfully withdraw

cryptocurrency totaling approximately thirty-two thousand dollars ($32,000.00) from www.cbpromaxtrade.com and www.cbsunmax.com to her personal bank account.

53. Defendant "1" instructed Plaintiff to deposit around twenty-three thousand dollars ($23,000.00) back to www.cbpromaxtrade.com and www.cbsunmax.com.

54. However, when Plaintiff attempted to withdraw around two hundred two thousand and five hundred dollars ($202,500.00) worth of cryptocurrency on or about July 17, 2023, Plaintiff's account was suspended. Plaintiff was told that before she could withdraw her cryptocurrency, she was required to transfer additional cryptocurrency to the fraudulent www.cbpromaxtrade.com and www.cbsunmax.com exchanges to pay taxes on her earnings.

55. When Plaintiff questioned Defendant "1" about the transfer issues she was experiencing, Defendant "1" provided excuses and made additional false representations.

56. Plaintiff communicated with additional individuals who claimed to be customer service representatives and assured Plaintiff that everything would be resolved once she deposited additional cryptocurrency to pay taxes on her earnings.

57. This is when Plaintiff realized she had been scammed. Plaintiff made numerous unsuccessful attempts to transfer the cryptocurrency from the fake copycat

exchange back to her Crypto.com wallet.

**B. Plaintiff's Forensic Tracing of Their Stolen Cryptocurrency**

58. When a transaction is made on the blockchain, it is assigned a "transaction hash" ("TXID"). A transaction hash is a unique string of characters that is given to every transaction that is verified and added to the blockchain. A TXID is used to uniquely identify a particular transaction. All on-chain transactions (the transactions from or to external addresses) have a unique TXID that can be seen in transaction details. All on-chain transactions (depositing and withdrawing of funds) have a unique TXID that can be found in transaction details.

59. Within the time frame of June 9, 2023, and July 19, 2023, Plaintiff MAOYING SONG made 9 transactions from her Crypto.com and MetaMask accounts to the fraudulent exchange. In total, Plaintiff transferred approximately 202,615.71 Tether (USDT) and 4.165 Ethereum (ETH) to the fraudulent exchange, which had a market value at the time of approximately $210,407.00 (USD).

60. Plaintiff has retained forensic cryptocurrency tracing experts who have traced Plaintiff's stolen assets on the blockchain. *See* Dkt. No. 55 – Plaintiff's Updated Tracing Report completed by experts at CNC Intelligence Inc. Plaintiff incorporates Dkt. No. 55 - Plaintiff's Updated Tracing Report completed by experts at CNC Intelligence Inc. into her third amended complaint.

61. All transactions and communications were conducted with the direct

assistance and encouragement of Defendant "1" a/k/a "Thomas Johnson," who, upon information and belief, was directed to defraud Plaintiff by his co-conspirators including JOHN DOES 1-9, Infiniweb, and ITECHNO.

62. As the tracing report shows, Defendant "1" a/k/a "Thomas Johnson" with the help of multiple co-conspirators opened numerous cryptocurrency wallets that, upon information and belief, are owned or controlled by ITECHNO and were used to launder cryptocurrency by Defendant "1" a/k/a "Thomas Johnson" who participated either voluntarily or through force to perpetrate the fraud and laundering of Plaintiff's stolen proceeds through the blockchain until the stolen assets reached various cryptocurrency wallets believed to be owned and controlled by Defendant Infiniweb and/or ITECHNO.

### C. Laundering Network and Involvement of Infiniweb and ITECHNO

63. The fraudulent scheme described above is consistent with the "pig butchering" (aka confidence scams) identified by the United States Department of Justice ("DOJ") and the United States Secret Service in the DOJ's Complaint, in which criminal actors use fraudulent platforms, social engineering, and complex laundering networks to steal and conceal victim assets.

64. In *United States of America v. Approximately 225,364,961 USDT*, Civil Action No. 25-cv-1907, the Department of Justice ("DOJ") detailed an investigation wherein the United States Secret Service traced the proceeds of pig butchering scams

through a network of at least 144 OKX exchange accounts and hundreds of intermediary wallets. In the DOJ's Complaint, it details how cryptocurrency stolen from victims of the same scam perpetrated against the Plaintiff were laundered through intermediary wallets until they were ultimately consolidated into seven wallets on the OKX platform, which were seized by the DOJ and hold over $225 million USDT. *See United States of America v. Approximately 225,364,961 USDT*, Civil Action No. 25-cv-1907, Verified Complaint for Forfeiture *In Rem* (Case No. 1:25-cv-01907, D.D.C.) attached as Exhibit A (hereinafter referred by its exhibit number or as "DOJ Complaint") at ¶¶ 15, 45-240.

65. According to the DOJ's Complaint, "Law enforcement analyzed the transactional activity associated with the 144 OKX Accounts and observed over 263,000 deposit transactions that totaled about *three billion dollars* in transactions. Notably, 98% of these transactions were conducted between November 2022 and November 2023" – **inclusive of the period that Plaintiff was scammed.** Exhibit A – DOJ Complaint at ¶ 65.

66. Using the First In First Out (FIFO) method on the Lukka blockchain tracing platform, Plaintiff obtained an updated tracing of his stolen cryptocurrency. Plaintiff's updated tracing using the FIFO method identified the network of wallets that were used by Defendants to steal and launder his cryptocurrency. Plaintiff has compared her updated tracing to the network of wallets identified in the DOJ

Complaint, revealing that his stolen cryptocurrency was laundered through approximately 23 intermediary wallets, including the following:

0x891238b32df936c48a91adf74299adf2c80d32a7 (*see* USA v. Approx. 225,364,961 USDT, Case No. 1:25-cv-01907-AHA, Dkt 1-3, 1-5)
0x3a30f406d55399ba533697d7b50e5ba14bfad619 (Dkt 1-4, 1-5)
0x10099c106805d68c24fa9c64f3a1247f743c081b (Dkt 1-4)
0x3d7eea656a95285669c06386d78ce53f02af0904 **(Dkt 1-4, 1-8; "Blacklisted"; "Op.Token Relationship Meme")**
0xa6173a4128bb9adef4fbe4d858363fbcda23c089 (**Dkt 1-4, 1-5;** "**Blacklisted**")
0x3f76c558a700d7628024c542a695007bf1944d6a (Dkt 1-4)
0x0e125b3a99bcbe89ea60a0b0f37d9e1b80ce9bce (Dkt 1-4, 1-22)
0x609a28e9e20e87e6214db6b7a7f2528450b11419 (Dkt 1-4, 1-8, 1-14)
0xe8ccf74e57e11788da2ae0980be8667ffd6314e0 (Dkt 1-5)
0xb287544885a8480efd5a75108049ba43318299f0 (Dkt 1-5)
0x9d3526812bb06bda91a4cbeb7a1422d37d41457b (Dkt 1-5)
0x1e97b03ebb4f3b69edd6828c09696165192a9f6e (Dkt 1-5, 1-19)
0xdafeeaf9581a55d511846087de84ce82a98c039e (Dkt 1-6)
0xf6124ebbb761241cec7e8c7826a06c90aa102812 **(Dkt 1-6; "Community Complaint"; "Chainabuse Report 1765")**
0xe7bf99aaa8efa5c80bb2f39084634db464c02e0d **(Dkt 1-6; "Unhosted Wallet")**
0xe9b312c54f3b6c9305aabeb3a8d4bea789af3830 (Dkt 1-6)
0xc81e62dc8b639d736bb369b76e6c06618b43ce00 **(Dkt 1-6; "Community Complaint"; "cbsunpromax.com")**
0x38e7745acf5479c29b52f215a6b594bca91ca735 (Dkt 1-6)
0xe6d2db3e6a84bfd204ec905f8ac20c3efeb36d49 (Dkt 1-6)
0xab3ec98abafa91339cb38b71242bbf8ad0114e81 (Dkt 1-6)
0xa7eeeae38f08d53b2014332670834043 75af1341 (Dkt 1-12; "**Unhosted Wallet**")
0x529b1e9f3f96409c46793f00e40bca8124f228d6 (Dkt 1-14)
0x74ad6676525afd815a57bc6929915718e32ca523 (Dkt 1-31)

67. These same wallets were also used to launder the criminal proceeds that were ultimately seized by the DOJ. *USA v. Approx. 225,364,961 USDT*, Case No. 1:25-cv-01907-AHA, Dkt 1-3, 1-4, 1-5, 1-6, 1-8, 1-12, 1-14, 1-19. 1-22, 1-31). Moreover, the fraudulent platform used by Plaintiff "cbsunpromax" was identified

in the DOJ's action as one of the malicious platforms used by ITECHNO to defraud victims, including the Plaintiff. *See Id*. at Dkt 1-6.

68. Thus, Plaintiff was a victim of the same type of scam in the DOJ's action, during the same relevant time period described in the DOJ's Complaint of November 2022 through November 2023, from the one of the various malicious platforms identified by the DOJ, and her stolen cryptocurrency was laundered through some of the same wallets that were also used by the perpetrators in the DOJ's action.

69. The DOJ's Verified Complaint and supporting evidence identify Infiniweb as the owner of five of the seized wallets. *Id*. at ¶ 240.

70. Infiniweb has appeared in the DOJ's forfeiture action and filed a Verified Claim asserting an interest in all 7 of the seized OKX wallets. *See* Exhibit B – Infiniweb Technology, Inc.'s Verified Claim.

71. Infiniweb is an online gaming/gambling company with "close links with Xionwei Technologies, which is accused of being involved in kidnapping and human trafficking. The accusations of kidnapping and human trafficking were outlined in a 120-page report from 2023, submitted to the nineteenth congress of the Republic of the Philippines." *See* Exhibit A - DOJ Complaint at ¶ 240. (quoting Philippe Auclair, Andy Brown, Jack Kerr, Samindra Kunti, Steve Menary, *Meet the*

*hydras*: *tracing the illegal gambling operators that sponsor football*).[8] According to the DOJ's Complaint, "Infiniweb was also listed on a 'LIST OF CANCELLED OFFSHORE GAMING LICENSEES,' appearing to be dated January 15, 2024, posted by the Philippine Amusement and Gaming Corporation." *Id.* (citing Philippine Amusement and Gaming Corporation, List Of Cancelled Offshore Gaming Licensees).[9]

72. The DOJ's investigation further identifies ITECHNO as a key participant in the scam and laundering operation.

73. In the DOJ's Complaint, "[a]ll 144 OKX Accounts are believed to be controlled by a group of cryptocurrency confidence scam actors and/or their money laundering co-conspirators." *Id.* at ¶ 47. According to the DOJ, many of the subject OKX Accounts were opened by employees of ITECHNO. *See e.g.*, *id.* at ¶¶ 45-66. ITECHNO operated out of a scam compound in the Philippines, likely employing forced labor to perpetrate cryptocurrency pig butchering scams and launder victim funds. *Id.*

74. The movement of Plaintiff's stolen assets through some of the same

---

[8] https://www.playthegame.org/news/meet-the-hydras-tracing-the-illegal-gambling-operators-that-sponsor-football/ (Jan. 30, 2024).

[9] https://www.pagcor.ph/regulatory/pdf/offshore/list-of-cancelled-offshore-gaming-licensees.pdf (Jan. 15, 2024)

intermediary wallets identified by the DOJ to launder the assets to wallets owned or controlled by ITECHNO which, per the DOJ's Complaint, were eventually transferred to the seven wallets owned by Infiniweb provides strong evidence of ITECHNO and Infiniweb's involvement in the theft and laundering of Plaintiff's cryptocurrency.

75. Plaintiff incorporates by reference the DOJ's Verified Complaint for Forfeiture *In Rem*, the exhibits thereto, and Plaintiff's own tracing analysis, and will rely on these findings to establish the relationship between the newly added defendants and the theft and laundering of Plaintiff's cryptocurrency.

## COUNT I
## RACKETERING IN VIOLATION OF 18 U.S.C. § 1962

76. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

77. At all relevant times, Defendants—including Defendant "1" a/k/a "Thomas Johnson," Infiniweb Technology, Inc., ITECHNO, and JOHN DOES 1-9—constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4), associated in fact for the common purpose of executing a global cryptocurrency fraud and money laundering scheme.

78. The operation of Defendant "1" a/k/a "Thomas Johnson," Infiniweb Technology, Inc., ITECHNO, and JOHN DOES 1-9, individually and through their

alleged businesses including their fraudulent cryptocurrency trading and use of online gambling platforms to launder criminal proceeds constitutes a racketeering operation.

79. Infiniweb and ITECHNO directed and coordinated with each other and with Defendant "1" a/k/a "Thomas Johnson" and JOHN DOES 1-9 (and potentially other unidentified co-conspirators) ("RICO Enterprise," or "Enterprise") within the meaning of 18 U.S.C. § 1961(4), which Enterprise was engaged in, or the affairs of which affected, interstate and foreign commerce.

80. Infiniweb, ITECHNO, Defendant "1" a/k/a "Thomas Johnson," and JOHN DOES 1-9 were each also a member of the RICO Enterprise, as each was a distinct person, separate and apart, from each of the RICO Enterprise members together.

81. Defendants, individually and collectively, conducted or participated, directly or indirectly, in the conduct of the affairs of the RICO Enterprise through a pattern of racketeering activity, as described above.

82. Each person's participation was effective partly because each mimicked an actual on-going business (including the fraudulent platform) with a presence in the marketplace: the United States and indeed worldwide. Upon information and belief, Infiniweb used its online gambling business, which had a presence within the marketplace, to further launder the illicit proceeds into the

worldwide economy.

83. As co-conspirators, the unlawful conduct of each member of the RICO Enterprise is attributed to every member.

84. The pattern of racketeering activity included, but was not limited to, multiple acts of wire fraud (18 U.S.C. § 1343), conspiracy to commit wire fraud (18 U.S.C. § 1349), money laundering (18 U.S.C. § 1956(a)(1)(B)(i)), and conspiracy to commit money laundering (18 U.S.C. § 1956(h)), all in violation of 18 U.S.C. § 1962(c).

85. The predicate acts set forth in this Amended Complaint include defrauding Plaintiff beginning in June 2023, through domestic and international communication including Facebook Messenger, WhatsApp, and email messaging with Plaintiff, and then laundering the criminal proceeds through the blockchain and ultimately into Infiniweb's online gambling business operation.

86. The predicate acts set forth in this Complaint are related, in that they have the same or similar purposes, results, participants, and methods of commission, and are otherwise interrelated by distinguishing characteristics and are not isolated events. The related criminal schemes set forth in this Amended Complaint constitute a "pattern or patterns of racketeering activity" as defined in 18 U.S.C. § 1961(5).

87. The Defendants engaged in two or more predicate acts of racketeering within a period of ten years and committed at least one such act after October 15,

1970.

88. The information that would establish further predicate acts and further acts of racketeering is solely within the control of Defendants. Plaintiff requires discovery to ferret out the further extent of predicate acts and further acts of racketeering, including the identity of similarly situated defrauded victims and the scope of the systematic fraud.

89. Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in acquisition of an interest in, or in the establishment or operation of, the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(a).

90. The RICO Enterprise's activities affected interstate and foreign commerce, as the scheme targeted victims in the United States (including California), utilized U.S.-based and foreign cryptocurrency exchanges, and involved the movement of assets across national boundaries.

91. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff demands that judgment be entered against each Defendant, jointly and severally, as follows:

(a) damages;

(b) statutory trebled damages pursuant to 18 U.S.C. § 1964(c);

(c) punitive damages;

(d) costs, including reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

(e) costs;

(f) interest; and

(g) such other and further relief as this Court deems just and proper.

**COUNT II**
**CONVERSION**

92. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

93. Through fraudulent misrepresentations, Defendants convinced Plaintiff to invest her money into cryptocurrency.

94. Defendants then convinced Plaintiff to transfer her cryptocurrency to fake exchanges owned and operated by Defendants.

95. After Plaintiff transferred his cryptocurrency assets to the fake platform, Defendants then transferred Plaintiff's cryptocurrency to cryptocurrency addresses owned or controlled by Defendant "1", John Doe Defendants 1-9, ITECHNO, and Infiniweb.

96. Plaintiff owned and had a right to possess the cryptocurrency.

97. Defendants misappropriated Plaintiff's funds.

98. Defendants have converted Plaintiff's funds to their own use or to the use of others not entitled thereto and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment.

99. Plaintiff has suffered damages as a direct and proximate result of Defendants' conversion.

**WHEREFORE**, Plaintiff MAOYING SONG demands that judgment be entered against Defendant "1" and JOHN DOES 1-9, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT

100. Plaintiff conferred a direct benefit upon Defendants by transferring the valuable cryptocurrency that Defendants converted from Plaintiff.

101. Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit.

102. The circumstances under which Plaintiff conferred, and Defendants accepted, such benefit render Defendants' retention of the benefits inequitable.

103. Equity requires that Defendants return to Plaintiff the benefits she

conferred upon Defendants.

**WHEREFORE**, Plaintiff MAOYING SONG demands that judgment be entered against Defendant "1" and JOHN DOES 1-9, jointly and severally, for damages, interest, costs, and such other further relief as this Court deems just and proper.

## COUNT IV
## IMPOSITION OF CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS

104. Plaintiff adopts and realleges the allegations set forth in paragraphs 13 through 65 above, as if fully and expressly set forth herein, and further alleges as follows.

105. This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendants.

106. This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

107. As set forth more fully above, Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

108. The cryptocurrency assets at issue are specific identifiable property and have been traced to Binance, Coinhako, and Crypto.com.

109. Any and all assets being held by Defendants at Binance, Coinhako, and Crypto.com must be held in trust for Plaintiff's benefit, and Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

110. The digital assets identified herein which are being held by Defendants at Binance, Coinhako, and Crypto.com must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

**WHEREFORE**, Plaintiff MAOYING SONG demands the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of Defendant "1" and/or JOHN DOES 1-9, in the identified cryptocurrency wallet addresses held at Binance, Coinhako, and Crypto.com, and further demands that the wrongfully obtained property be returned to Plaintiff.

## COUNT V
## CONSPIRACY

111. Plaintiff adopts and realleges the allegations set forth in paragraphs 13 through 65 above, as if fully and expressly set forth herein, and further alleges as follows.

112. The Defendants conspired and confederated with each other to commit,

and committed, Conversion (Count II), and Unjust Enrichment (Count III).

113. Relying on the false statements made by Defendant "1", including that he was an expert in cryptocurrency investments and would help Plaintiff earn money on her investments, Plaintiff transferred her cryptocurrency assets to fake cryptocurrency platforms which were in actuality cryptocurrency deposit addresses owned by the John Doe Defendants 1-9.

114. Defendant "1" conspired with others who acted as customer service representatives and are the owners of the cryptocurrency deposit addresses where Plaintiff's stolen cryptocurrency was transferred.

115. Once her assets were transferred to the fake exchanges, Defendants refused to return them to Plaintiff.

116. As a result, Plaintiff has suffered damages as a direct and proximate result of Defendants' conspiracy.

**WHEREFORE**, Plaintiff MAOYING SONG demands that judgment be entered against Defendant "1" and JOHN DOES 1-9, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Dated: February 6, 2026.

Respectfully Submitted,

*/s/ Daniel J. Thornburgh*
Daniel J. Thornburgh, Esq.
Fla. Bar No. 0042661
AYLSTOCK, WITKIN,
KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 850-916-7449
dthornburgh@awkolaw.com

*Attorney for Plaintiff*